# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

GREAT LAKES COMMUNICATION
CORPORATION,

        Plaintiff,

vs.

AT&T CORPORATION,

        Defendants.[1]

No. 13-CV-4117-DEO

ORDER ON REPORT AND
RECOMMENDATION

_____

Before the Court is a Report and Recommendation ("R&R"), Docket No. 32, issued by United States Magistrate Judge Leonard T. Strand, concerning the Plaintiff Great Lakes Communication Corporation's [hereinafter GLCC or Great Lakes] Motion to Dismiss Counterclaim and Motion for Summary Judgment, Docket No. 17.

On June 24, 2014, Judge Strand issued the R&R recommending that the Plaintiff's Motion to Dismiss Counterclaim be granted in part and denied and part, and that Plaintiff's Motion for Summary Judgment be denied. Docket No.

_____

[1] AT&T filed a counter claim against Great Lakes Communication Corporation. However, for purposes of clarity, the Court will refer to Great Lakes Communication Corporation as the Plaintiff and the AT&T as the Defendant.

32.   On July 8, 2014, AT&T filed Objections to the Magistrate's R&R.  Docket No. 33.  On that same date, the Plaintiff also filed Objections to the Magistrate's R&R. Docket No. 34.  The Court will discuss the particulars of the Magistrate's R&R and the Objections below.

The Court held a hearing on the parties' Objections on August 20, 2014.  After listening to the parties' arguments, the Court took the matters under consideration and now enters the following.

## I.  BACKGROUND

Magistrate Strand sets out the relevant facts in this matter, which this Court adopts and will not repeat here. However this case is complex as it involves fees associated with telephone calls.  Accordingly, some background is necessary.

Although in modern society telephone services are taken for granted, telephone calls are both technically and legally complicated.  Thankfully, this case only involves the later issue.  Phone calls (and the companies that provide phone services) are governed by a dense and overlapping regulatory scheme.  The Federal Communications Commission (FCC) controls

national telephone regulations, while the Iowa Utilities Board (IUB) regulates services exclusive to the State of Iowa. The parties in this case are in the business of providing telephone service. The Plaintiff, Great Lakes, is a local telephone service provider (referred to as an LEC) while the Defendant, AT&T, provides telephone service nationwide (referred to as a long distance company or IXC).

Local telephone companies, such as the Plaintiff, are just that, local. They provide telephone services to a specific geographic location, such as Northwest Iowa. However, it goes without stating, that many phone calls placed in one area are to parties far away, outside the province of an LEC. If a local caller wants to talk to someone far away, the call is transferred from the LEC to a national carrier, such as AT&T. The national long distance company then deposits the call with an LEC in the locality of where the original caller was calling. Thus, for example, a call placed in Sioux City, Iowa, to Denver, Colorado, would involve three companies: an LEC in Sioux City where the call is placed, a

national IXC which carries the call across state lines, and a final LEC in Denver, where the call ends.[2]

The fees earned or payed in this type of arrangement by the LECs and IXCs are referred to as switched access service charges. To accomplish national (and international) telephone service, and to ensure profit for the involved businesses, local and national telephone companies either establish tariffs or enter into contracts to establish the switched access service charges.[3]

For a long time, one major phone company controlled all telephone service in the United States. After a series of anti-trust lawsuits, the "Ma Bell" telephone monopoly was broken up. In the wake of that break, the first local exchange carriers (incumbent local exchange carriers or ILECs) were formed. In Iowa, the ILEC is Century Link (formally Qwest). Younger, local carriers, such as Great Lakes, are

---

[2]    As noted by Judge Strand, this example is the most simple type of example. In reality, a telephone call may be handed off multiple times to multiple phone companies.

[3]    As noted by Judge Strand, these are 'typical' types of arrangements, but other types of arrangements exist, such as centralized equal access (CEA) and direct trunking, both of which are described in the Report and Recommendation. See Docket No. 32, p. 4.

known as competing local exchange carriers (CLECs) because they compete with the old, established phone carriers.

In 2001, the FCC issued In Re Access Charge Reform, 16 FCC Rcd. 9923, 9924 (2001) [hereinafter CLEC Access Charge Order] and promulgated corresponding regulations. In general, the FCC limited a CLEC's tariffed switched access rate to the rate charged by the ILEC that serves the same geographic area. A CLEC could impose a higher rate only by negotiating agreements with individual IXCs. In addition, the FCC recognized that CLECs serving rural areas face unique cost challenges and, therefore, created a "rural exemption." Instead of being limited to the access rates tariffed by the ILEC, a CLEC meeting the FCC's definition of a "rural CLEC" could benchmark its interstate access rates to those tariffed by the National Exchange Carrier Association (NECA).

The particular phone company practice at issue in this case is referred to as "access stimulation." Access stimulation occurs when an LEC partners with some business that generates lots of phone calls. The actual equipment/hardware necessary to accommodate the business' call operation is installed at or near the LEC. The result of this

type of arrangement is a sharp increase in call traffic coming over the IXC's to the LEC in question. The LEC benefits from this arrangement because the LEC can charge the IXC whatever switched access service fee that was previously applicable for the increased number of incoming calls. It is undisputed that the Plaintiff, Great Lakes, engages in access stimulation.

Because access stimulation can cause a crippling spike in the fees incurred by IXCs, the FCC has sought to limit and regulate the practice. To that end, the FCC issued <u>In the Matter of Connect Am. Fund A Nat'l Broadband Plan for Our Future Establishing Just & Reasonable Rates for Local Exch. Carriers High-Cost Universal Serv. Support Developing an Unified Intercarrier Comp. Regime Fed.-State Joint Bd. on Universal Serv. Lifeline & Link-Up Universal Serv. Reform -- Mobility Fund</u>, 26 FCC Rcd. 17663 (2011) [hereinafter the <u>Connect America Fund Order</u>]. The <u>Connect America Fund Order</u> defines access stimulation as when a revenue sharing agreement exists between an LEC and a business and the LEC had a three-to-one interstate terminating-to-originating traffic ratio in a calendar month, or has had a greater than 100 percent increase in interstate originating and/or terminating

switched access minutes of use in a month compared to the same month in the preceding year. The Connect America Fund Order went on to say that an LEC engaged in access stimulation must file a revised tariff in which it benchmarks its access rates "to the rates of the price cap LEC with the lowest interstate switched access rates in the state.[4]

## II.  STANDARD

Pursuant to statue, this Court's standard of review for a magistrate judge's Report and Recommendation is as follows:

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's Report and Recommendation on dispositive motions and prisoner petitions, where objections are made as follows:

---

[4]  A "price cap LEC" is an LEC that is subject to the FCC's price capping regulations. Generally, these are the dominant, incumbent LECs. See, e.g., 47 C.F.R. § 61.41.

> [t]he district judge to whom the case is
> assigned shall make a de novo determination
> upon the record, or after additional
> evidence, of any portion of the magistrate
> judge's disposition to which specific
> written objection has been made in
> accordance with this rule. The district
> judge may accept, reject, or modify the
> recommendation decision, receive further
> evidence, or recommit the matter to the
> magistrate judge with instructions.

FED. R. CIV. P. 72(b).

Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. <u>United States v. Wise</u>, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

## III. ISSUES

Before the <u>Connect American Fund Order</u> came down, Great Lakes and AT&T entered a settlement agreement in regards to access rates. Great Lakes filed a new tariff after the <u>Connect America Fund Order</u> came into effect, which Great Lakes contends complies with that Order in regards to the access stimulation issue. However, AT&T stopped paying switched access fees after the new tariff came into effect. Great Lakes alleges that AT&T has refused to pay approximately

$400,000 in interstate access fees due and owing under the Agreement and a substantial amount of interstate access fees billed pursuant to the Tariff.  See Docket No. 1.  Great Lakes contends that the total unpaid balance owing from AT&T is over $4 million.   Id.   In its complaint, Great Lakes asserts claims for breach of contract, collection of amounts owed pursuant to the Tariff, quantum meruit and unjust enrichment. Great Lakes also seeks a declaratory judgment directing AT&T to pay access charges in accordance with the Tariff in the future.

AT&T filed an Answer denying Great Lakes' claims and also filed several counter claims alleging:  violation of federal tariffs contrary to 47 U.S.C. §§ 201(b) and 203(c); improper application of Qwest's rates in violation of 47 U.S.C. § 201; unjust and unreasonable practices and unreasonable discrimination in violation of 47 U.S.C. §§ 201(b) and 202(a) with respect to Great Lakes' transport arrangements; billing for transport services not provided in violation of 47 U.S.C. § 201(b); declaratory relief.  Docket No. 11.

Great Lakes then filed a Motion to Dismiss AT&T's counter claims, Docket No. 17, and a Motion for Summary Judgment, also

Docket No. 17.  In the Motion for Summary Judgment, Great Lakes argued that the Court should summarily find in favor of Great Lakes and against AT&T on the liability issue because, allegedly, AT&T failed to comply with contractual dispute resolution procedures.  In the Motion to Dismiss, Great Lakes argued that AT&T lacked standing to make any of its claims, and then made specific arguments about why each of Counterclaim I, II, and III should fail as a matter of law. This Court referred those Motions to U.S. Magistrate Judge Strand who issued the R&R presently at issue.  Each party then filed Objections to the Report and Recommendation.

In his Report and Recommendation, Judge Strand recommends that this Court deny Great Lakes' argument that AT&T lacks standing.  Judge Strand further recommends that AT&T be ordered to file an amended counterclaim that cures any alleged standing issue.  Great Lakes did not mention the standing issue in its Objection.  See Docket No. 34.

Regarding Counterclaim I, Judge Strand recommends that the Motion to Dismiss be denied and Great Lakes did not object.

Regarding Counterclaims II and III, Judge Strand recommends that Great Lakes' Motion to Dismiss be granted, and that Counterclaims II and III be dismissed without prejudice, pursuant to the primary jurisdiction doctrine. In its Objection, AT&T states, "AT&T does not object to referral of these claims under the primary jurisdiction doctrine, [but] the Court should stay those claims, rather than dismiss them." Docket No. 33, p. 2-3.

Regarding Great Lakes' Motion for Summary Judgment, Judge Strand recommends the Motion to be denied. Great Lakes objects to this portion of the Report and Recommendation and argues that the Motion for Summary Judgment should be granted. The Court will address these issues below.

## IV. ANALYSIS

The Court has reviewed the Report and Recommendation, along with the entire file, and pursuant to the relevant law, conducted a de novo review of the record with no deference given to the conclusions reached by the Magistrate.

### A. Motion to Dismiss Based on Standing

In their Motion to Dismiss, Great Lakes argues that AT&T lacks standing. Specifically, Great Lakes argues that under

47 U.S.C. § 207, only parties damaged by a common carrier can bring suit, and AT&T, by its own admission, has not been damaged because it has withheld payment since early 2012. Neither side disputes that Section 207 requires damage, or that, if AT&T has not payed during the relevant time, it has not been damaged. Rather, AT&T argues its pleadings admit that it has paid some applicable charges to Great Lakes.

At the outset of his analysis, Judge Strand set out the appropriate Motion to Dismiss standard based on <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009). Applying that standard, Judge Strand determined there was a deficiency in AT&T's counterclaim, stating:

> it is impossible to determine, solely from the parties' respective pleadings, which charges were addressed by the April 2012 payment. Thus, pointing to GLCC's paragraph 35 does not cure AT&T's failure to allege that it has paid any disputed charges (let alone AT&T's affirmative statement that it withheld payment "to the extent" AT&T deems GLCC's charges to be unlawful). GLCC has correctly identified a significant flaw in AT&T's pleading.

Docket No. 32, p. 15. However, Magistrate Strand did not recommend dismissal, he recommended:

> if AT&T is able to allege, in good faith,
> that it has suffered injury in the form of
> payment of unlawful charges, it should be
> permitted to do so.  As such, I will
> recommend that GLCC's motion to dismiss the
> counterclaim for lack of standing be denied
> without prejudice and that AT&T be granted
> leave to file an amended counterclaim to
> cure its deficient pleading of facts
> demonstrating injury.

Docket No. 32, p. 15.

As noted above, neither party addresses this issue in their Objections.[5] The Court has considered this issue and is persuaded that Judge Strand's recommendation should be adopted.  Accordingly, Great Lakes' Motion to Dismiss based on standing will be dismissed without prejudice.  Within 20 days of this Order, AT&T shall filed an amended counterclaim addressing this issue.  If the amended counterclaim does not sufficiently <u>allege</u> standing, then Great Lakes may file a renewed Motion to Dismiss.

**B.  Motion to Dismiss Counterclaim I**

In Counterclaim I, AT&T alleges that Great Lakes has

---

[5]  Great Lakes, in its Response to AT&T's Objections, does argue that AT&T cannot pursue substantive objections to Judge Strand's recommendation to dismiss Counterclaims II and III until the standing issue is resolved.  See Docket No. 45, p. 2.

billed it for services that are not recoverable pursuant to the Tariff. Great Lakes argues, so long as its conference call customers are paying a fee to Great Lakes for interstate services, AT&T and other IXCs are required to pay Great Lakes' tariffed rates for switched access service.

Regarding Counterclaim I, Judge Strand recommends that the Motion to Dismiss be denied, stating that:

> [b]ecause AT&T plausibly alleges that GLCC's customers are not paying fees, AT&T is entitled to conduct discovery to explore the accuracy of that allegation. If it is true, then AT&T has almost certainly been over billed since the Tariff took effect. For this reason, I will recommend that GLCC's motion to dismiss be denied with regard to Count I of AT&T's counterclaim.

Docket No. 32, p. 22. Great Lakes did not Object to this portion of the Report and Recommendation. Regardless, the Court has conducted a de novo review. The Court is persuaded that Judge Strand's recommendation be adopted, and Great Lakes' Motion to Dismiss Counterclaim I is denied.

**C. Motion to Dismiss Counterclaims II and III**

In Counterclaim II, AT&T complains that Great Lakes' interstate switched access rates, as reflected in the tariff, are so high as to be unjust and unreasonable in violation of

14

47 U.S.C. § 201(b).  See Docket No. 11.  AT&T argued that
Great Lakes has adopted Qwest's rates, as required by the
Connect America Fund Order, but that those rates are still
too high because Great Lakes' cost structure is not comparable
to Qwest's.  AT&T argued that Great Lakes' charges for
interstate switched access far exceed its charges for
intrastate switched access thus, according to AT&T, the
tariffs are unjust and unreasonable.

In Counterclaim III, AT&T seeks relief from Great Lakes'
alleged refusal to negotiate a direct interconnection between
Great Lakes' and AT&T's facilities.  AT&T contends that it has
a direct trunking arrangement with another LEC (Qwest) and has
attempted to negotiate such an arrangement with Great Lakes,
but Great Lakes has refused.  See Docket No. 11.  AT&T argues
that such an arrangement would dramatically reduce its
transportation charges regarding GLCC's traffic and that Great
Lakes has established a direct trunking relationship with at
least one other carrier.  According to AT&T, Great Lakes'
refusal to negotiate is an unjust and unreasonable practice,

in violation of 47 U.S.C. § 201(b), and amounts to unreasonable discrimination in violation of 47 U.S.C. § 202(a).

Judge Strand came to the same conclusion regarding both Counterclaims II and III. He concluded that both claims fall within the primary jurisdiction of the FCC.

AT&T does not Object to that conclusion, and agrees that the FCC should consider those issues. See Docket No. 33, p. 2. However, because the FCC has primary jurisdiction, Judge Strand recommended that Counterclaims II and III be dismissed without prejudice. Specifically, Judge Strand stated:

> [w]hen primary jurisdiction applies, a federal court may either stay or dismiss a claim in favor of the appropriate agency. United States v. Henderson, 416 F.3d 686, 691 (8th Cir. 2005) (citing Jackson v. Swift Eckrich, Inc., 53 F.3d 1452, 1456 (8th Cir. 1995)). Given AT&T's concession that any relief it might be entitled to obtain pursuant to Count II would be purely prospective, there is no need to delay the other claims in this lawsuit while AT&T litigates its "unreasonable rate" claim at the FCC. Instead, I recommend that Count II be dismissed without prejudice pursuant to the primary jurisdiction doctrine.

Docket No. 32, p. 27–28.[6]

AT&T objects to that portion of the Report and Recommendation. AT&T argues that this Court should stay Counterclaims II and III pending FCC review. In making that argument, AT&T relies on <u>TON Services v. Qwest Corp.</u>, 493 F.3d 1225, 1242–45 (10th Cir. 2007), a 10th Circuit case that directs district courts to favor stays over dismissals in these types of primary jurisdiction referral cases. See Docket No. 33, p. 2–5. However, in their Response, Great Lakes points out that the relevant 8th Circuit precedent, cited by Judge Strand, states that, "[a]fter [a] District Court determin[es] that primary jurisdiction rested with the FCC... [a] district court 'has discretion either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.'" <u>Access Telecommunications v. Sw. Bell Tel. Co.</u>, 137 F.3d 605, 609 (8th Cir. 1998). This Court is bound by the

---

[6] Regarding Counterclaim III, Judge Strand stated, "[t]here is no reason to put GLCC's claims on hold while the FCC considers the issues raised in Counts II and III. As with Count II, I recommend that Count III be dismissed without prejudice pursuant to the primary jurisdiction doctrine." Docket No. 32, p. 32.

8th Circuit precedent, not the 10th Circuit precedent. Accordingly, dismissal is appropriate in a primary jurisdiction case absent unfair disadvantages.

In this case, AT&T has failed to show that it would be unfairly disadvantaged by dismissal. In its Objections, AT&T admits that any disadvantage is speculative, at best, stating, "a dismissal without prejudice of AT&T's Count II and Count III may 'prejudice or unfairly disadvantage' AT&T, either because the election of remedies provision in Section 207 may bar a later action at the FCC, or because some portion of AT&T's claim may be barred by the limitations period." Docket No. 33, p. 5 (emphasis added). However, the risk of delay if the issues are stayed is very real. Accordingly, after conducting a de novo review, the Court will adopt Judge Strand's recommendation that Counterclaims II and III be dismissed without prejudice pursuant to the primary jurisdiction doctrine.

**D.  Motion for Summary Judgment**

The final issue is Great Lakes' Motion for Summary Judgment. Judge Strand reviewed the Motion and recommends that it be denied. Great Lakes' (strongly) objects to the

Magistrate's determination and argues that the Motion for Summary Judgment should be granted.

The Court has conducted a de novo review, and finds that Magistrate Strand applied the correct 'genuine issue of material fact' standard and correctly viewed the evidence in the light most favorable to the non-moving party.

The Motion for Summary Judgment primarily concerns the billing dispute provision of the switched access fee tariff filed by Great Lakes on January 11, 2012, and "deemed lawful" pursuant to 47 U.S.C. § 204(a)(3). It is undisputed that tariff included the following language:

> [a]ll bills are presumed accurate, and shall be binding on the Buyer unless written notice of a good faith dispute is received by the Company. For the purposes of this Section, "notice of a good faith dispute" is defined as written notice to the Company's contact (which is listed on every page of this Tariff) within a reasonable period of time after the invoice has been issued, containing sufficient documentation to investigate the dispute, including the account number under which the bill has been rendered, the date of the bill, and the specific items on the bill being disputed. A separate letter of dispute must be submitted for each and every individual bill that the Buyer wishes to dispute. Prior to or at the time of submitting a good faith dispute, Buyer shall tender payment for any undisputed

> amounts, as well as payment for any
> disputed charges relating to traffic in
> which the Buyer transmitted an interstate
> telecommunications to the Company's
> network.

See Docket No. 32, p. 35. On May 2, 2012, AT&T objected to certain access fees billed to AT&T on April 1, 2012. Great Lakes responded that AT&T failed to comply with the billing dispute procedures outlined above. Great Lakes requested prompt payment for the remainder of the invoiced changes. AT&T contends it then paid Great Lakes' invoice for March 2012, in the amount of $100,203. Great Lakes acknowledges that AT&T made a payment of $100,203 on April 2, 2012, but does not agree it was for the March 2012 invoice.

It its Motion for Summary Judgment, Great Lakes argues, in essence, that because AT&T failed to comply with the dispute procedure contained in the tariff, it has ceded its claims related to the billing dispute. Great Lakes contends AT&T did not provide proper written notice of a good faith dispute and did not tender payment for the disputed charges. Great Lakes argues that strict compliance with tariff provisions is required and, therefore, that AT&T has waived the right to dispute Great Lakes' invoices.

AT&T, of course, resisted the Motion for Summary Judgment and argued that it was not a buyer as contemplated by the tariff, and thus not bound by the tariff's billing dispute requirements. Moreover, while AT&T agrees that it failed to comply with the letter of the tariff's notice requirements, it contends that its email message of May 2, 2012, was sufficient to preserve its right to dispute Great Lakes' charges. Finally, AT&T argues that the FCC has previously declared a tariff's advance-payment requirement to be unreasonable and, therefore, that AT&T was not required to issue payment to Great Lakes as a condition of disputing Great Lakes' charges.

In its first argument, AT&T alleges that it was Great Lakes who breached the tariff by billing AT&T for services not contemplated by the tariff. Under the terms of the tariff, Great Lakes can only provide "Switched Access Services" to a Buyer, which is an IXC that uses Great Lakes' services to complete calls to and from end users. Importantly, the tariff states that to qualify as an end users, the would be end user must pay a fee to the Company for telecommunications service. AT&T's argument is that because Great Lakes' end users do not

pay a fee to Great Lakes, Great Lakes is itself violating the tariff.

In his Report and Recommendation, Judge Strand analyses this argument and notes that in its statement of facts, Great Lakes fails to allege that end users pay it a fee. Great Lakes seemingly concedes this point and rather contends that it submitted an affidavit that declares end users are required to pay Great Lakes a fee. Considering that situation, Judge Strand found that:

> [s]imply stating that GLCC "requires" its end users to pay a fee does not establish, as a matter of law, that such a fee was actually paid with regard to the specific services for which GLCC seeks to recover payment from AT&T. The conclusory, one-sentence statement in Mr. Nelson's affidavit does not come close to establishing that there is no genuine dispute of material fact concerning AT&T's status as a Buyer. Even if Mr. Nelson's affidavit satisfied GLCC's initial burden as the summary judgment movant, I further find – for reasons discussed earlier – that AT&T has shown that there are grounds supporting a genuine dispute of GLCC's allegation. AT&T points to prior IUB rulings containing findings (a) that GLCC did not collect fees from its end-user customers (as of 2009), (b) that GLCC did not change certain business practices between 2009 and 2012 despite being directed to do so in 2009 and (c) that GLCC made various false or incorrect

> representations to the IUB... It is quite
> possible, as GLCC claims, that GLCC has
> changed its practices and has collected
> fees from all of its customers since the
> Tariff took effect. However, the record
> does not reflect that this is true as a
> matter of law. AT&T is entitled to conduct
> discovery to determine whether it is
> actually a Buyer, as defined by the Tariff,
> with regard to the services at issue. If
> AT&T is not a Buyer, then the Tariff does
> not apply. As such, I recommend that
> GLCC's motion for summary judgment be
> denied on this basis.

Docket No. 32, p. 39-40.

In its Objection to Judge Strand's conclusion, Great
Lakes argues that:

> GLCC... challenges the Report's conclusion
> that summary judgment should be denied
> because GLCC must first prove that AT&T is
> a "Buyer" as defined by GLCC's tariff in
> order to establish that AT&T is obligated
> to pay the disputed charges and file a good
> faith notice of dispute. This conclusion
> turns the dispute-resolution provision on
> its head--it wrongly shifts the burden from
> AT&T to lodge a good faith dispute if it
> disagrees with GLCC's invoices for
> terminating traffic onto GLCC to disprove
> any allegations made by AT&T in order to
> receive payment for the terminating
> services it indisputably provides.

Docket No. 34, p. 5. Great Lakes goes onto argue that based
on the 8th Circuit Court of Appeals' decisions related to
tariff interpretation, this Court is bound to interpret the

23

tariff in the manner advocated by Great Lakes.  Great Lakes
concludes that:

> [i]n sum, the Report adopts a construction
> of GLCC's dispute-resolution provision that
> is inconsistent with the plain intent of
> the provision and that hinders, rather than
> enforces, the purpose for which the tariff
> was filed.  In these circumstances, the
> conclusions reached in the Report should
> not be adopted.  Rather, the Court should
> conclude that AT&T was required to pay GLCC
> the tariffed rate when it indisputably sent
> its interstate interexchange traffic to
> GLCC's network if it wanted to preserve its
> dispute.

Docket No. 34, p. 11.

AT&T resists Great Lakes' Objection and argues that Judge
Strand correctly concluded that there is a genuine issue of
material fact as to whether AT&T is a buyer.  This Court
agrees.  After a de novo review, the Court concludes that AT&T
has alleged a genuine issue of material fact on this issue.
Put another way, there is not enough evidence in the record to
find, as a matter of law, that AT&T is bound by the billing
dispute provision of the tariff.  There are simply too many
lingering questions regarding Great Lakes' relationship with
end users.  Accordingly, Great Lakes' Motion for Summary
Judgment must be **denied.**

Judge Strand's Report and Recommendation goes on to discuss two alternate rationales for denying the Motion for Summary Judgment. First, Judge Strand analyzed the billing dispute provision of the tariff and found that AT&T substantially complied with the provision, and that the opposite conclusion, that AT&T failed to comply and thus waived the right to sue, would be fundamentally unreasonable and contrary to the two year statute of limitations for over charge cases. In its Objection, Great Lakes argues that Judge Strand does not have the authority to invalidate a 'deemed lawful' tariff provision, such as the billing dispute provision.

Similarly, Judge Strand analyzed the payment requirement of the billing dispute provision, and found it unreasonable. That section provides that for a buyer to dispute charges, it must first pay the charges. AT&T argues that Great Lakes has breached the tariff by billing for services contrary to its terms, resulting in charges that are unjust and unreasonable under 47 U.S.C. § 201(b). AT&T contends it does not have to provide payment as a condition of disputing the charges under these circumstances. Great Lakes objects to Judge Strand's

finding, again, arguing that it is beyond the scope of this dispute for a Federal District Court to invalidate a deemed lawful tariff provision.  Great Lakes argues that, "a 'deemed lawful' tariff provision cannot be retroactively invalidated, but rather must be enforced until declared unreasonable by the FCC on a prospective basis, reflects the choice that Congress made in adopting 204(a)(3) when deregulating the telecommunications industry in 1996."  Docket No. 34, p. 13. In making their arguments, both parties rely on the Sprint Commc'ns L.P. v. Northern Valley Commc'ns, LLC, 26 FCC Rcd. 10780, ¶ 14 (2011), aff'd, 717 F.3d 1017 (D.C. Cir. 2013). AT&T argues the Northern Valley case shows a similar pre-payment bill dispute provision that has been found unreasonable, while Great Lakes argues that its pre-payment provision was written to avoid being found unreasonable in light of the Northern Valley decision.[7]

Because the Court is convinced that a genuine issue of material fact exists related to the question of whether AT&T

---

[7]  In fact, Great Lakes dedicates an entire section of its Objection to discussing the Northern Valley case, and how Great Lakes' counsel was involved in both that case and its subsequent history.  See Docket No. 34, p. 14-19.

is a buyer under the disputed tariff provisions, it is premature to determine whether this Court has the authority to find the billing dispute provision unreasonable. Accordingly, the Court need not make any further findings on these issues at this time.

## V.   CONCLUSION

The Magistrate's Report and Recommendation is accepted as set out above. Accordingly, Great Lakes' Motion to Dismiss, Docket No. 17, is **DENIED in part, and GRANTED in part**. Regarding standing, AT&T is directed to file an amended counterclaim curing its failure to plead sufficient facts no later than twenty (20) days after entry of this Order. Great Lakes' Motion to Dismiss AT&T's Counterclaim I is **DENIED**. Great Lakes' Motion to Dismiss AT&T's Counterclaims II and III is **GRANTED, both without prejudice**. Finally, Great Lakes' Motion for Summary Judgment, also Docket No. 17 is **DENIED**.

**IT IS SO ORDERED** this 3rd day of March, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa