**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

GREAT LAKES COMMUNICATION
CORPORATION,

    Plaintiff,

vs.

AT&T CORPORATION,

    Defendant.

No. C 13-4117-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING REFERRAL
TO THE FCC UNDER THE
PRIMARY JURISDICTION
DOCTRINE**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION ............................................................................. 2*

*II.  LEGAL ANALYSIS ......................................................................... 4*
    *A.   Referral Under The Primary Jurisdiction Doctrine .......................... 4*
    *B.   Whether Referral Of Any Issues Is Appropriate ............................. 8*
       *1.   AT&T's issues ................................................................. 8*
          *a.  Whether a "deemed lawful" tariff can be
              challenged ............................................................. 8*
          *b.  The scope of "benchmarking" and "functional
              equivalence" ....................................................... 10*
          *c.  The "end user" and "telecommunications
              services" issue ..................................................... 11*
          *d.  The failure to tariff "telecommunications
              services" issue ..................................................... 14*
       *2.   GLCC's "supplemental" issues ......................................... 15*

*III. CONCLUSION ............................................................................. 17*

## I. INTRODUCTION

This case is, primarily, a billing dispute between two telecommunications companies, plaintiff Great Lakes Communications Corporation (GLCC), a "competitive local exchange carrier" or CLEC, and AT&T Corporation (AT&T), an "interexchange carrier" or IXC. The billing dispute is over charges to AT&T by GLCC for routing telephone calls to GLCC's purported "end users," who are "Free Calling Parties" or FCPs, resulting from what AT&T contends is "access stimulation." "Access stimulation" is partnering of a local exchange carrier (LEC) with a business that generates voluminous telephone calls. The FCPs in question advertise free conference calling services or free "chat" lines. After Judge Donald E. O'Brien, to whom the case was previously assigned, entered his Order On Motions For Summary Judgment (docket no. 149), on June 8, 2015, only two claims remain at issue. The first is GLCC's claim, in part of Count II of its Complaint, for payments under its revised tariff that were not covered by a previous settlement agreement. The second remaining claim is AT&T's claim, in Count IV of AT&T's Counterclaim, for a refund of payments mistakenly made under GLCC's revised tariff. The trial in this matter is currently set to begin on July 13, 2015.

In his Order On Motions For Summary Judgment, Judge O'Brien deferred AT&T's request for referral of this action to the Federal Communications Commission (FCC), on the basis of that agency's "primary jurisdiction" over pertinent issues. He gave the parties ten days from the date of his Order to brief whether they believe referral is appropriate in light of his decisions on the motions for summary judgment. The day after entering his Order On Motions For Summary Judgment, Judge O'Brien transferred this case to me. *See* Order (docket no. 151).

On June 16, 2015, AT&T filed is Brief In Support Of Referral To FCC Under Primary Jurisdiction Doctrine (docket no. 154), seeking referral of four issues to the FCC, notwithstanding its representation that it stood ready to proceed to trial. Those four issues are the following: (1) whether Judge O'Brien's ruling that GLCC's revised tariff is "deemed lawful," Order On Motions For Summary Judgment at 36-39, 74, somehow shields the revised tariff from challenge, even if the revised tariff violates the Communications Act and the FCC's rules; (2) if, as AT&T contends, GLCC's revised tariff can be challenged, the proper scope of the FCC's "benchmarking" and "functional equivalence" requirements for access-stimulating LECs;[1] (3) whether carriers like GLCC are properly charging "end user" fees to their FCP customers for "telecommunications services," as required under the FCC's rules and GLCC's revised tariff; and (4) even if GLCC's fees are for "telecommunications services," whether GLCC has, nevertheless, violated the Communications Act and the FCC's rules, because those fees are not set forth in GLCC's revised tariff.

On June 18, 2015, GLCC filed its Brief In Opposition To Primary Jurisdiction Referral (docket no. 162). In its Opposition, GLCC contends that none of the issues identified by AT&T should be referred to the FCC, particularly on the eve of trial. This is so, GLCC contends, because each of the four issues that AT&T contends warrant referral have been fully resolved by the court, or because the FCC has already considered

---

[1] For example, AT&T contends that GLCC violated the FCC's decision in *In the Matter of Connect Am. Fund*, 26 FCC Rcd. 17663, 17886 (2011) (the "*Connect America Order*"), by failing to offer rates that mirrored the rates of the lowest-priced LEC in Iowa, which is a company called CenturyLink, where FCC rules provide that "tariffed [CLECs'] charges for 'interstate switched exchange access services' [must] be for services that are 'the functional equivalent' of [the appropriate incumbent local carrier's (ILEC's)] interstate switched exchange access services." *Qwest Commc'ns v. Northern Valley Commc'ns*, 26 FCC Rcd. 8332, ¶ 8 (2011).

and spoken to the relevant legal and policy questions. In the event that the court determines that one or more of the issues identified by AT&T should now be referred to the FCC, however, GLCC argues that two further issues should also be referred to the FCC. Those issues are the following: (1) in the event that the services provided by GLCC to AT&T, by which calls placed by AT&T's retail customers, as well as those calls delivered by AT&T on a wholesale basis, are delivered to FCPs served by GLCC, do not qualify as a "switched access service" under GLCC's applicable interstate access tariff, whether GLCC is entitled to obtain compensation for these services; and (2) if so, what is a reasonable rate for these services.

## II. LEGAL ANALYSIS

I must now determine what, if any, issues should be referred to the FCC under the "primary jurisdiction doctrine," or whether this case should proceed to trial, as scheduled, on the remaining claims. As a first step in that determination, I will summarize the standards for referral of issues to an agency under the "primary jurisdiction doctrine."

### A. Referral Under The Primary Jurisdiction Doctrine[2]

As the Eighth Circuit Court of Appeals has succinctly explained,

---

[2] As the parties are aware, I recently discussed and applied the "primary jurisdiction doctrine" in *Sprint Communications Company, L.P. v. Butler-Bremer Mutual Telephone Company*, No. C 14–3028–MWB, 2014 WL 4980539 (N.D. Iowa Oct. 6, 2014) (slip op.). The parties have not taken issue with that discussion of the doctrine, and I have not found any more recent discussions by the Eighth Circuit Court of Appeals that require any revision of that discussion. The present case does raise some additional issues in the referral determination, however.

> Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Primary jurisdiction "promotes uniformity, consistency, and the optimal use of the agency's expertise and experience." *[United States v.] Henderson*, 416 F.3d [686,] 691 [(8th Cir. 2005)].

*United States v. Rice*, 605 F.3d 473, 475 (8th Cir. 2010). The Eighth Circuit Court of Appeals has recognized, however, that "[t]he doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (quoting *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 477 (8th Cir. 1988)).

The Eighth Circuit Court of Appeals has made clear that "[t]he doctrine targets *issues*." *Rice*, 605 F.3d at 476 (emphasis in the original). Thus, there must be an issue that the district court could "refer" to the administrative agency under the "primary jurisdiction doctrine." *Id.* (citing *Reiter*, 507 U.S. at 268 and n.3). The question is whether the case would require the court to "decide any issues on which an administrative ruling would be appropriate," and, more specifically still, an issue "suited to the 'expert and specialized knowledge of the [agency].'" *Id.* (quoting *W. Pac. R.R.*, 352 U.S. at 64). Disputed factual issues are not properly ones within agency expertise, such that they should be referred to an agency pursuant to the "primary jurisdiction doctrine," because such issues properly fall within the function of a jury. *Henderson*, 416 F.3d at 691.

5

Moreover, "expert consideration and uniformity of resolution" by an agency are not required where the issue presented merely turns on the meaning of published agency regulations, because interpretation of such materials "is well within the 'conventional experience of judges.'" *Alpharma, Inc.*, 411 F.3d at 939 (quoting *Access Telecomm. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998)).

On the other hand, where determination of the scope and application of agency regulations requires agency expertise, referral pursuant to primary jurisdiction is appropriate. *Id.* (contrasting a determination of whether a competitor's product had received FDA approval for certain uses, which turned on the meaning of agency publications, and, thus, was not appropriate for referral to the FDA, with the question of whether the competitor's product *should have been approved as safe and effective*, which was a question that required the FDA's scientific expertise, although that question had not been raised in the case). Similarly, "application of the [primary jurisdiction] doctrine is appropriate when policy considerations are at issue," *Atlantis Express, Inc. v. Standard Transp. Servs., Inc.*, 955 F.2d 529, 532-33 (8th Cir. 1992), such as when resolution of the issue could have an impact on future viability of regulated businesses or how they conduct their business. *Id.* at 535 (remanding with directions to refer to the Interstate Commerce Commission (ICC) the question of whether a licensed freight broker, which arranged transportation services on behalf of shippers and carriers, should be liable for certain freight charges and, if so, what the amount of this liability would be).

It is clear that either a dismissal or a stay is appropriate, once a district court has determined that it should refer issues to an agency under the "primary jurisdiction doctrine." *See Rice*, 605 F.3d at 475 (stating that a stay of further proceedings is appropriate to give the parties a reasonable opportunity to seek an administrative ruling (citing *Reiter*, 507 U.S. at 268)); *Henderson*, 416 F.3d at 691 (explaining that the district court has the power to dismiss or stay the action in deference to administrative agency

proceedings). What is less clear from decisions of the Eighth Circuit Court of Appeals is when and how the district court should decide whether to dismiss or stay the action before it. In *Sprint Communications Company, L.P. v. Butler-Bremer Mutual Telephone Company*, No. C 14–3028–MWB, 2014 WL 4980539 (N.D. Iowa Oct. 6, 2014) (slip op.), I concluded that, whatever other factors might be relevant, some possibility that the statute of limitations could run on a party's claim, while the FCC considers the regulatory issues, if that claim was dismissed, warranted a stay, rather than dismissal. *Butler-Bremer*, 2014 WL 4980539 at *5.

Also, as mentioned, above, it is clear that "[t]he [primary jurisdiction] doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" *Alpharma*, 411 F.3d at 938 (quoting *Barlow*, 846 F.2d at 477. What is less clear is precisely what factors enter into the court's determination of whether the likely added expense and delay are outweighed by the need for agency determination of pertinent issues—an issue that is particularly significant where, as here, referral to the agency is sought on the eve of trial. One decision of the Eighth Circuit Court of Appeals suggests that a substantial lapse of time between the events at issue and the determination of whether or not to refer issues to the agency is relevant, particularly if the agency has instituted a new policy in the interim. *See Inman Freight Sys., Inc. v. Olin Corp.*, 807 F.2d 117, 119 (8th Cir. 1986). Also, the Second Circuit Court of Appeals has explained that "'[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 90 (2d Cir. 2006) (quoting *National Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 223 (2d Cir. 1995)). Thus, I believe that the more strongly agency referral would promote the goals of the "primary jurisdiction doctrine"—that is, "'uniformity, consistency, and the optimal use of the agency's expertise and experience,'" *Rice*, 605 F.3d at 475 (quoting *Henderson*, 416 F.3d at 691)—the more the

7

advantages of referral to the agency outweigh the potential for added costs and delays. Finally, the Second Circuit Court of Appeals has also observed that "'the Supreme Court has never identified judicial economy as a relevant factor'" in the determination of whether referral is appropriate, notwithstanding the delay. *Ellis*, 443 F.3d at 90 (quoting *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 68 n.2 (2d Cir. 2002)).

### B. Whether Referral Of Any Issues Is Appropriate

#### 1. AT&T's issues

##### a. Whether a "deemed lawful" tariff can be challenged

The first issue that AT&T asks me to refer to the FCC is whether Judge O'Brien's ruling that GLCC's' revised tariff is "deemed lawful," Order On Motions For Summary Judgment at 36-39, 74, somehow shields GLCC's revised tariff from challenge even if it violates the Communications Act and the FCC's rules. AT&T argues that it cannot possibly be the case that a "deemed lawful" tariff is unchallengeable under applicable case law. AT&T also argues that such a rule of "unchallengeability" cannot be reconciled with Judge O'Brien's statement that he was inclined to find the revised tariff's dispute resolution provision was unreasonable and his reservation of the question of whether or not GLCC had complied with the FCC's "functional equivalence" requirement for jury determination. AT&T argues that whether a "deemed lawful" tariff is exempt from challenge is the sort of issue that the FCC, not the court, should decide in the first instance, because the FCC should determine what happens when a "deemed lawful" tariff conflicts with existing law, as a matter within its expertise and policy purview.

GLCC responds that there is no need to refer this issue, because the FCC has clearly articulated the impact that "deemed lawful" status has on challenges to tariffs, and the answer is plain: GLCC's "deemed lawful" tariff is insulated from AT&T's

8

continued attacks in federal court. GLCC argues—and contends that AT&T has conceded—that such a challenge is permissible only before the FCC, not the court, and only for *prospective* relief, pursuant to provisions of the Communications Act.

In his Report And Recommendation (docket no. 32), on GLCC's Motion To Dismiss AT&T's Counterclaims,[3] United States Magistrate Judge Leonard T. Strand did, indeed, conclude that this issue falls within the FCC's primary jurisdiction. He also concluded, however, that AT&T's concession that its claim can only be for *prospective* relief meant that there is no need to delay GLCC's claims to recover *past* charges. Report And Recommendation at 26-28. In the circumstances where the only available avenue to challenge the "deemed lawful" tariff is agency proceedings *for prospective relief*, and such relief can neither bar GLCC's claim for damages for *past* unpaid fees under the tariff nor support AT&T's claim that it mistakenly paid prior fees, this issue simply is no longer relevant in this case. Thus, it is not appropriate for me to refer it to the FCC. *See Rice*, 605 F.3d at 476 (explaining that the question is whether the case would require the court to "decide any issues on which an administrative ruling would be appropriate"). To put it another way, referring this issue would not serve the purposes of the "primary jurisdiction doctrine" to "'promote uniformity, consistency, and the optimal use of the agency's expertise and experience,'" *Rice*, 605 F.3d at 475 (quoting *Henderson*, 416 F.3d at 691), at least to the extent of making the result *in this case* uniform and consistent with similar cases nationwide.

Even if this issue were otherwise referrable, however, I would be disinclined to refer it, where AT&T plainly already has an avenue, *without referral*, to seek *prospective* relief from the FCC on the basis of a challenge to a "deemed lawful" tariff. *See In the*

---

[3] This Report And Recommendation was later adopted, in all pertinent parts, by Judge O'Brien on March 3, 2015. *See* Order On Report And Recommendation (docket no. 120).

*Matter of Implementation of Section 402(b)*, Report and Order, 12 FCC Rcd. 2170, ¶¶ 8, 18-21 (1997) (explaining that challenges to a "lawful" tariff may be made pursuant to 47 U.S.C. §§ 205 and 208, before the agency, seeking prospective relief, but not before a federal court in an action for past damages pursuant to other provisions of the Communications Act). Because it does not appear that AT&T has availed itself of that opportunity to obtain agency determination since dismissal of its counterclaim challenging the revised tariff, AT&T's delay weighs against referring the issue to the agency on the eve of trial. *Cf. Inman Freight Sys., Inc.*, 807 F.2d at 119 (suggesting that a substantial lapse of time between the events at issue and the request for referral to the agency is relevant to whether or not to refer the issue to the agency).

I will not refer this first issue identified by AT&T to the FCC.

### b. The scope of "benchmarking" and "functional equivalence"

The second issue that AT&T asks me to refer to the FCC is that, if, as AT&T contends, GLCC's revised tariff can be challenged, what is the proper scope of the FCC's "benchmarking" and "functional equivalence" requirements for access-stimulating LECs. I will not refer this issue, either, where whether or not it is appropriate for referral is contingent upon the *first* issue identified by AT&T being appropriate for referral *and* still relevant in this case, and I concluded that first issue was neither. *See Rice*, 605 F.3d at 476 (explaining that the question is whether the case would require the court to "decide any issues on which an administrative ruling would be appropriate"). Again, Judge Strand has previously concluded that this issue falls within the "primary jurisdiction" of the FCC, but he has also concluded that it did not warrant a stay or delay in the case, and dismissed the counterclaim to which the issue was relevant. *See* Report And Recommendation at 28-32. Judge O'Brien also rejected AT&T's attempt to resuscitate the issue as relevant in this case in his Order On Motions For Summary Judgment at 36-39.

I will not refer this second issue identified by AT&T to the FCC.

### c. *The "end user" and "telecommunications services" issue*

The third issue that AT&T asks me to refer to the FCC is whether carriers like GLCC are properly charging "end user" fees to their FCP customers for "telecommunications services," as is required under the FCC's rules and GLCC's revised tariff. As Judge O'Brien explained, in his Order On Motions For Summary Judgment, "Great Lakes may not assess access charges under its tariff unless it routes a call to an 'End User' that 'must pay a fee to [GLCC] for telecommunications service.'" Order On Motions For Summary Judgment at 40. Thus, this issue does not go to whether GLCC's "deemed lawful" tariff can be challenged, but to whether GLCC violated its tariff by charging AT&T for the access fees in question in GLCC's remaining claim. That issue is still plainly relevant to the remaining claims in this case.

AT&T argues that numerous courts have already determined that the FCC is better situated than courts to determine whether carriers are properly charging "end user" fees to their supposed customers. AT&T argues that GLCC has violated the Communications Act, the FCC's rules, and its revised tariff, because its FCP partners, who provide conference and chat services, are not "end users" that pay "fees" for "telecommunications service," where GLCC's tariff adopts the Communications Act's definition of "telecommunications." Here, AT&T argues, GLCC has only collected "fees" from its FCP customers for such "services" as "Collocation and Rack Space Allocation," "Electrical Power," and "Direct Inward Dialing" Numbers. Thus, AT&T argues, this case presents questions as to the meaning and scope of the term "telecommunications" under the tariff, the Communications Act, and the FCC's rules, and whether that meaning applies to the services billed by GLCC—all of which AT&T argues are issues better suited to determination by the FCC than by a federal court or a jury.

11

GLCC argues that no referral is appropriate, because it is simply not required to provide its telecommunications services to end users pursuant to a tariff, but may, instead, do so pursuant to individual contracts, under applicable FCC rules. Consequently, GLCC contends that the court can and should instruct the jury on the definition of "telecommunications service" set forth in the Act, at 47 U.S.C. § 153(50); allow the parties to present evidence regarding the fees that were assessed by GLCC and paid by the FCP customers; allow the parties to argue about why they believe that the contracts and fees do or do not constitute the provision of "telecommunications service" for a "fee"; and leave the determination to the jury. GLCC also argues that this is not a complex process that necessitates agency expertise, nor is there any indication of a larger industry-wide dispute requiring uniformity resulting from agency action.

I find that GLCC's argument completely misses the point. The question is not whether GLCC is permitted to charge FCPs fees pursuant to a "tariff" or an individual contract, nor is the question whether the process for jury trial and jury determination of an issue is "complex" or "necessitates agency expertise." The question is whether the *underlying issue* of what constitutes "telecommunications services" within the meaning of the Communications Act and, in turn, GLCC's tariff, is a matter best left to agency expertise. What constitutes "telecommunications services" within the Act, quite clearly, involves not just factual issues that a jury can address, but determination of the scope and application of agency regulations, which requires agency expertise and, consequently, it is an issue for which referral pursuant to the "primary jurisdiction doctrine" is appropriate. *Alpharma, Inc.*, 411 F.3d at 939. It is also a question that is fraught with policy considerations involving the impact of certain regulatory decisions upon the telecommunications industry that are also best considered by the appropriate agency. *See Atlantis Express, Inc.*, 955 F.2d at 535, 532-33. Indeed, GLCC has made no attempt to counter AT&T's contention that numerous courts have already determined that the FCC

12

is better situated than courts to determine whether carriers are properly charging "end user" fees to their supposed customers.[4] I agree with AT&T that this question of how to classify particular services under the definition of "telecommunications" in the Communications Act and GLCC's tariff is better suited for the FCC than a jury. Moreover, it is a question that is not only relevant, but critical to the claims at issue in this case, because it will determine whether or not GLCC can recover the access charges at issue or whether AT&T is excused from paying them, because they violate the applicable tariff. *See Rice*, 605 F.3d at 476 (explaining that the question is whether the case would require the court to "decide any issues on which an administrative ruling would be appropriate"). It would make little sense to proceed to trial with this critical question, which falls squarely within the FCC's purview, unanswered by the agency.

Furthermore, because I find that this question strongly implicates the purposes of the "primary jurisdiction doctrine," I find that the possibility—even probability—of added expense and delay do not outweigh the reasons for referral of this question to the FCC. *See Alpharma*, 411 F.3d at 938 (explaining that "[t]he doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" (quoting *Barlow*, 846 F.2d at 477)); *see also*, *supra* page 7 (explaining why, in balancing the advantages of applying the "primary jurisdiction doctrine" against the potential for added costs and delay, the more strongly referral promotes the goals of the doctrine, the more advantages of referral

---

[4] AT&T cites the following cases: *Northern Valley Commc'ns v. Qwest Commc'ns Co.*, No. 11-4052, 2012 WL 996999, *3 (D.S.D. Mar. 23, 2012); *Qwest Commc'ns v. Tekstar Commc'ns*, No. 10-490, 2010 WL 2772442, *3 (D. Minn. July 12, 2010) (both collecting numerous cases referring such issues to the FCC); *see also Farmers v. FCC*, 668 F.3d 714, 719-20 (D.C. Cir. 2011) (whether companies involved in access stimulation scheme were entities that "subscrib[e]" to a carrier's service determined whether they were "end users" under a tariff, and whether they had done so, and the general "nature of the [the carrier's] relationship with the companies [was] a subject demonstrably within the [FCC's] expertise.").

outweigh the potential for added costs and delays). Thus, I will refer this issue to the FCC. Out of concern that there is some possibility that the statute of limitations could run on GLCC's claim, while the FCC considers the regulatory issues, if GLCC's claim is dismissed, however, I conclude that a stay of this case, rather than dismissal, is warranted. *Butler-Bremer*, 2014 WL 4980539 at *5.

I will refer this issue to the FCC.

### d. *The failure to tariff "telecommunications services" issue*

The last issue that AT&T asks me to refer to the FCC is whether, even if GLCC's fees are for "telecommunications services," GLCC has, nevertheless, violated the Communications Act and the FCC's rules, because those fees are not set forth in GLCC's revised tariff. AT&T concedes that GLCC has allowed permissive "de-tariffing" for the services in question in 47 U.S.C. § 203, but contends that the FCC has never made the factual findings necessary to allow the de-tariffing of services that CLECs provide to end users. AT&T contends that resolving this issue will require, among other things, determining whether the "filed tariff doctrine" requires that telecommunications services be provided pursuant to a tariff or whether a contract is sufficient, and interpreting the FCC's various orders addressing "de-tariffing" and the access charges that may be—or must be—assessed by CLECs via a filed tariff.

GLCC counters that the FCC has already made abundantly clear that CLECs are not required to tariff end user services, but may charge fees pursuant to individual contracts, citing *Seventh Report & Order*, 16 FCC Rcd. at 9938, ¶ 39, and also citing *In re Universal Service Contribution Methodology*, 28 FCC Rcd. 16037, ¶¶ 11-12 Declaratory Ruling and Order (Nov. 25, 2013). GLCC argues that it would be bizarre to read these FCC policy statements as (silently) requiring the assessment of a tariffed charge by CLECs on end users in order for CLECs to recover tariffed charges from

IXCs. In short, GLCC argues, neither the Act nor GLCC's tariff requires that the fee that GLCC's customers pay GLCC for "telecommunications services" be a tariffed fee.

While I readily agree with AT&T that this issue would be one within the primary jurisdiction of the FCC, if the FCC had not yet spoken on it, it appears to me, in light of the FCC rulings cited by GLCC, that the FCC has spoken. AT&T just doesn't like the answer or is trying to make a collateral attack on the FCC's fact-finding underlying that answer. Where the FCC has spoken on the issue, what remains in this case is determination of the meaning of published agency regulations, and the interpretation of such materials, which "[are] well within the 'conventional experience of judges.'" *Alpharma, Inc.*, 411 F.3d at 939 (quoting *Access Telecomm.*, 137 F.3d at 608).

I will not refer this issue to the FCC.

### 2.     *GLCC's "supplemental" issues*

As I mentioned, above, GLCC argues that, in the event that I determine that one or more of the issues identified by AT&T should now be referred to the FCC, two further issues should also be referred to the FCC. I have concluded that one critical issue in this case identified by AT&T should be referred and that a stay in this case is appropriate pending agency determination of that issue. I will now consider whether or not I will also refer either or both of the issues identified by GLCC.

The first issue that GLCC asks me to refer to the FCC is the following: In the event that the services provided by GLCC to AT&T, by which calls placed by AT&T's retail customers, as well as those calls delivered by AT&T on a wholesale basis, are delivered to FCPs served by GLCC, do not qualify as a "switched access service" under GLCC's applicable interstate access tariff, whether GLCC is entitled to obtain compensation for these services. In other words, this issue asks whether GLCC is entitled to some alternative compensation for the services it has provided to AT&T, if AT&T is correct that GLCC has violated its revised tariff. The second, closely-related issue that

15

GLCC asks me to refer is, if the answer on the first issue is yes, what is a reasonable rate for these services.

GLCC argues that courts that referred issues to the FCC prior to the *Connect America Fund Order* repeatedly found it appropriate to ask the FCC to take up these two additional questions, because they concluded that doing so would avoid the issues of the "filed tariff doctrine" that have caused alternative state law claims to be dismissed. Because the FCC has never taken up these issues, however—owing to settlements or other resolutions in the cases raising them—GLCC argues that a referral now would provide appropriate guidance on these unresolved questions with potential industry-wide impact.

AT&T has not responded to GLCC's alternative request to refer these "supplemental" issues to the FCC. Nevertheless, in light of the cases cited by GLCC referring these or very similar issues to the FCC,[5] and the FCC's subsequent failure to reach these issues, referral of these issues to the FCC would serve the purposes of the "primary jurisdiction doctrine" to "'promote uniformity, consistency, and the optimal use of the agency's expertise and experience,'" *Rice*, 605 F.3d at 475 (quoting *Henderson*, 416 F.3d at 691), between *this case* and similar cases nationwide. I recognize that referral of these issues to the FCC amounts to something of a collateral attack on the rulings, in this case, dismissing GLCC's alternative state-law claims and that a determination of these issues by the FCC could invite reinstatement of GLCC's state-law claims in this case. Nevertheless, I conclude that referral to and determination by the

---

[5] GLCC cites the following cases: *Sancom, Inc. v. AT & T Corp.*, 696 F. Supp. 2d 1030, 1043 (D.S.D. 2010); *Sancom, Inc. v. Sprint Commc'ns Co. LP*, 07-4107-KES, 2010 WL 936718 (D.S.D. March 15, 2010); *Qwest Commc'ns Co. v. Tekstar Commc'ns, Inc.*, No. 10–490, 2010 WL 2772442 (D. Minn. July 12, 2010); *Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co.*, No. 08–1130, 2009 WL 2155930 (D. Minn. July 14, 2009); and *Splitrock Properties, Inc. v. Qwest Communications Corp.*, No. 08–4172–KES, 2010 WL 2867126 (July 22, 2010).

FCC of these issues will likely serve the interests of justice and the purpose of the Communications Act to establish "just" compensation for telecommunications services. In these circumstances, the potential for added expense and delay is not sufficient to bar referral. *See Alpharma*, 411 F.3d at 938 (explaining that "[t]he doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" (quoting *Barlow*, 846 F.2d at 477)); *see also*, *supra* page 7 (explaining why, in balancing the advantages of applying the "primary jurisdiction doctrine" against the potential for added costs and delay, the more strongly referral promotes the goals of the doctrine, the more the advantages of referral outweigh the potential for added costs and delays).

Therefore, I will also refer both of GLCC's "supplemental" issues to the FCC.

### III. CONCLUSION

Upon the foregoing,

1. The following issues **are referred** to the FCC pursuant to that agency's "primary jurisdiction":

    a. Whether carriers like GLCC are properly charging "end user" fees to their FCP customers for "telecommunications services," as required under the FCC's rules and GLCC's revised tariff;

    b. In the event that the services provided by GLCC to AT&T, by which calls placed by AT&T's retail customers, as well as those calls delivered by AT&T on a wholesale basis, are delivered to FCPs served by GLCC, do not qualify as a "switched access service" under GLCC's applicable interstate access tariff, whether GLCC is entitled to obtain compensation for these services; and

    c. If the answer to the issue in b., above, is yes, what is a reasonable rate for those services.

2. This case is **stayed**, and the jury trial, currently set to begin on July 13, 2015, is **stricken**.

**IT IS SO ORDERED**.

**DATED** this 29th day of June, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA