# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| GREAT LAKES COMMUNICATION CORPORATION, <br><br> Plaintiff/Counterclaim Defendant, <br><br> vs. <br><br> AT&T CORPORATION, <br><br> Defendant/Counterclaimant. | No. C 13-4117-MWB <br><br><br> **OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO VACATE PRIMARY JURISDICTION REFERRAL AND STAY** |

_____

This case, involving a billing dispute between two telecommunications companies, plaintiff Great Lakes Communications Corporation (GLCC), a "competitive local exchange carrier" or CLEC, and defendant AT&T Corporation (AT&T), an "interexchange carrier" or IXC, is before me on GLCC's October 15, 2018, Motion To Vacate Primary Jurisdiction Referral And Stay. GLCC requests that I withdraw my June 29, 2015, order (Referral Order), which referred certain issues to the FCC, pursuant to the agency's "primary jurisdiction," and vacate the accompanying stay of the proceedings in this court. AT&T argues that the reasons for the referral remain and that the FCC is actively considering the matter, so that the referral and stay should continue.

More specifically, in support of its Motion To Vacate, GLCC contends that it has been more than 32 months since the FCC was first informed of the referral and 21 months since briefing was completed in the FCC proceedings, yet the FCC has taken no action to resolve the referred issues. GLCC argues that AT&T has unnecessarily delayed the proceedings before the FCC by injecting issues that I refused to refer based on a specious

argument that they had been "referred" by the judge to whom this case was previously assigned; dragging its feet for six months before filing its Formal Complaint; insisting on discovery of the improperly injected issues, even though this case was referred just weeks before trial; and insisting that the FCC bifurcate liability and damages proceedings. GLCC contends that the FCC then failed to decide the referred questions in a timely manner, contrary to a statutory deadline and a regulatory "shot clock" intended to speed up the disposition of the FCC's proceedings. GLCC argues that the FCC has simply taken an unreasonable amount of time without issuing any ruling. GLCC appends that its request to vacate the referral and lift the stay is "in light of" my announcement that I will be retiring from the bench in early 2019, and GLCC wants this case brought to a close before I retire rather than transferred to another judge.

In response, AT&T argues that I correctly determined that various issues should be decided by the FCC, not by a jury, the referred issues strongly implicate the purposes of primary jurisdiction, and the FCC has indicated—in response to GLCC's one and only inquiry about the status of the administrative proceedings—that it is actively considering the issues, so that I should not now lift the stay. Rather, AT&T argues that referring courts generally stay their hand until the resulting administrative action is final, because vacating a stay once the agency has actually undertaken to decide the issue creates more than a theoretical danger of actual conflict between agency and judicial decisions. Indeed, AT&T points out that very few of the cases on which GLCC relies ultimately support vacating the referral or lifting the stay, where the agency is actually proceeding on the referral. AT&T also disputes GLCC's contention that the agency proceedings have been unduly delayed, pointing out that GLCC delayed the start of those proceedings by pursuing a motion for reconsideration, an appeal, and an action for mandamus, all of which were frivolous, in response to my referral, and that GLCC insisted that AT&T not initiate formal agency proceedings until after the appeals ran their course. AT&T

2

contends that it did not unduly delay the filing of its Formal Complaint, because of the "fact pleading" requirements for that pleading before the agency. AT&T also points out that GLCC has never formally moved for the FCC to adhere to the statutory time limit that GLCC contends is applicable (and AT&T contends is not) or for application of any "shot clock" and, indeed, has not complained to the FCC about allegedly undue delay in the proceedings or the issuance of a decision. AT&T also argues that recent developments, both judicial and regulatory, support maintaining the stay, but if I decide to move forward with proceedings in this court, I should address all the issues that the FCC is considering based on AT&T's Formal Complaint.

In reply, GLCC disputes AT&T's contention that there were two referral orders, when the first order identified by AT&T, by the prior judge assigned to this case, dismissed Counts II and III of AT&T's Counterclaim on "primary jurisdiction" grounds, instead of referring any issues to the FCC. GLCC also contends that it asserted in a procedural conference with the FCC's Enforcement Bureau that the five-month statutory deadline applied, but the FCC has never ruled on the applicability of the deadline. GLCC also disputes that there are any subsequent developments that support maintaining the stay, because the FCC decisions to which AT&T points have no impact on the issues I referred to the FCC in this case. GLCC also reiterates that Eighth Circuit precedent establishes that a court retains the discretion to vacate its referral when an agency fails to act on the referred issues within a reasonable period of time.

I do not find substantial guidance from any decision in this Circuit concerning whether and when a district court should *withdraw* from a proper administrative agency a referral on "primary jurisdiction" grounds. Certainly, *Charter Advanced Servs. (MN), L.L.C. v. Lange*, 903 F.3d 715 (8th Cir. 2018), on which GLCC relies, is not such a decision. Indeed, in that case, the court did not even consider *withdrawal* of a referral. Rather, in the part of the decision cited by GLCC, the court stated the following:

> We note that while the FCC would be able to announce a classification decision regarding VoIP, it has so far declined to do so. *See, e.g.*, USF-ICC Transformation Order, 26 F.C.C.R. 17663, 18013-14 ¶ 954 (2011) (explaining that "the Commission has not classified interconnected VoIP services or similar one-way services as 'telecommunications services' or 'information services'") (footnote omitted). We sometimes stay our hand "while seeking the guidance of an administrative agency's perceived expertise" when resolving a question concerning a statute ordinarily interpreted by the agency. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 785 (8th Cir. 1999) (discussing the doctrine of primary jurisdiction). Here the agency has "decline[d] to provide guidance" for well over a decade, so that we may, in our discretion, proceed "according to [our] own light." *Id.* (quoting *Atchison, Topeka & Santa Fe Ry. v. Aircoach Transp. Ass'n*, 253 F.2d 877, 886 (D.C. Cir. 1958)).

*Charter Advanced Servs.*, 903 F.3d at 720 n.3. Thus, if anything, this part of *Charter Advanced Services* explains that the district court *may decline to refer a matter* to an agency *in the first instance* if the agency has had prior opportunities to address the issue, but the agency has not done so. The procedural footing as to both agency action on pertinent issues and the case before the court, here, are quite deferent, where the agency had never declined to address the pertinent issues, and I have *already* referred the issues to the FCC.

Another decision cited by GLCC, *American Automobile Manufacturers Association v. Massachusetts Department of Environmental Protection*, 163 F.3d 74 (1st Cir. 1998), also does not address withdrawal of a "primary jurisdiction" referral that a court had already made based on unreasonable delay by the agency. Rather, it actually states, "a court might refer a matter to an administrative agency, *explicitly providing,* however, that if the agency fails to rule within a reasonable amount of time, the court

would either vacate the referral order and decide the matter itself. . . ." 163 F.3d at 82 (emphasis added). There is also considerable validity to AT&T's observation that only a very few of the other cases cited by GLCC can possibly or plausibly be read to support withdrawal of a referral where an agency has actually undertaken to decide the issues referred. I simply find no substantial support in the case law for withdrawing a "primary jurisdiction" referral after a district court has actually referred issues to the agency.

Assuming, nevertheless, that I retain the discretion to withdraw a referral, where I had discretion to decide whether to refer issues in the first place, GLCC's strident complaints of undue delay by AT&T and the FCC ring rather hollow, here. GLCC also initially delayed prompt initiation of the FCC's proceedings on referral and the record does not demonstrate that GLCC has made any formal motion for a ruling by the FCC on the applicability of the time limits on agency decision-making that GLCC now relies on or even regular requests for a status conference or an indication of the status of the FCC's proceedings.

Moreover, I remain convinced that the reasons for referral of issues in this case to the FCC under its "primary jurisdiction" still exist. As I noted in my referral order, the Eighth Circuit Court of Appeals has explained,

> Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Primary jurisdiction "promotes

5

> uniformity, consistency, and the optimal use of the agency's expertise and experience." *[United States v.] Henderson*, 416 F.3d [686,] 691 [(8th Cir. 2005)].

*United States v. Rice*, 605 F.3d 473, 475 (8th Cir. 2010). The one decision of the Eighth Circuit Court of Appeals in the interim since my referral order to consider referral to any significant degree is not to the contrary. *See, e.g., Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015). The considerations stated in *Rice* still apply, perhaps even more so, where the agency has actually undertaken to decide the referred issues, as it has in this case. To pull the matter away from the agency, when the only indication is that the agency is actively considering the issues, would fly in the face of promoting proper relationships between the courts and administrative agencies, uniformity, consistency, and the optimal use of the agency's expertise and experience. *Rice*, 605 F.3d at 475.

So, what *has* changed? Only the passage of time while the agency has been considering the matter and the announcement of my retirement from the bench. As to the passage of time, I recognized in my Referral Order that referral on "primary jurisdiction" grounds presented the possibility—even probability—of added expense and delay, but that did not outweigh the reasons for referral of issues to the FCC. Referral Order, 13 (citing *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005), which explained that "[t]he doctrine is to be invoked sparingly, as it often results in added expense and delay" (internal quotation marks and citation omitted)). The delay, here, has not so far exceeded reasonable expectations as to outweigh the reasons for the referral. Furthermore, my imminent retirement is no reason for an abrupt withdrawal of the referral. As I also pointed out in my referral order, the Supreme Court has never identified judicial economy as a relevant factor in the determination of whether referral is appropriate, notwithstanding the delay. Referral Order at 8 (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 90 (2d Cir. 2006)). There are judges who will still be

active in this district who are every bit as able to preside over this case as I have ever been.

THEREFORE, GLCC's October 15, 2018, Motion To Vacate Primary Jurisdiction Referral And Stay (docket no. 232) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 20th day of November, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA